**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MATTEL, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 24-cv-12440 <br><br> **Judge Lindsay C. Jenkins** <br><br> **Magistrate Judge Daniel P. McLaughlin** |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY

Plaintiff Mattel, Inc. ("Mattel" or "Plaintiff") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II. STATEMENT OF FACTS ................................................................................................ 2

    A. Plaintiff's Trademarks, Copyrights and Products ............................................. 2

    B. Defendants' Unlawful Activities ....................................................................... 3

III. ARGUMENT ................................................................................................................... 4

    A. Standard for Temporary Restraining Order and Preliminary Injunction ......................... 5

    B. Plaintiff Will Likely Succeed on the Merits ..................................................... 5

    C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief .............................................................. 8

    D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction ............................................................................ 10

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ................................................. 11

    A. An *Ex Parte* Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement ......... 11

    B. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the BARBIE Trademarks and Barbie Copyrighted Work Is Appropriate ................................................................................................ 13

    C. Preventing the Fraudulent Transfer of Assets Is Appropriate ....................... 13

    D. Plaintiff is Entitled to Expedited Discovery ................................................... 14

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ............................................. 15

VI. CONCLUSION ............................................................................................................... 15

**MEMORANDUM OF LAW**

**I.        INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, false designation of origin, and copyright infringement against the defendants identified on Schedule A to the Complaint (the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling products using infringing and counterfeit versions of the federally registered BARBIE Trademarks and/or unauthorized copies of the federally registered Barbie Copyrighted Work (collectively, the "Unauthorized Products") through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Unauthorized Products. The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyright, as well as to protect unknowing consumers from purchasing Unauthorized Products over the internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

---

[1] The e-commerce store URLs are listed on Schedule A to the Complaint under the Online Marketplaces.

## II. STATEMENT OF FACTS

### A. Plaintiff's Trademarks, Copyrights and Products

Mattel, through its family of companies, is a leading designer, developer, marketer, manufacturer and distributor of well-known children's toys and games under its iconic brands, including the Barbie, UNO, Thomas & Friends, Hot Wheels, American Girl, and Fisher-Price. *See* Declaration of Adam Sapper (the "Sapper Decl.") at ¶ 4.

One of Mattel's most popular and successful brands is Barbie, a famous and world-renowned fashion doll line. *Id*. at ¶ 6. The Barbie doll was first introduced at the American International Toy Fair in New York on March 9, 1959, a date which has since become recognized by Mattel as Barbie's birthday. *Id*. at ¶ 8. The Barbie doll soon became famous around the world, dramatically impacting the way that children interacted with dolls, and the Barbie brand has since expanded to a vast range of commercial products and entertainment, including, but not limited to, doll accessories, playhouses, toy cars and other toy vehicles, books, movies, games, puzzles, clothing, beverages, candy, food, and more (collectively, the "Barbie Products"). *Id*. at ¶ 10. To date, more than one billion Barbie brand dolls have been sold across 150 different countries, as well as additional sales of non-toy Barbie Products in over 45 categories. *Id*. at ¶ 11. Total annual sales under the Barbie brand are more than a billion dollars, with much of that revenue stemming from sales of Barbie Products other than toys. *Id*.

The BARBIE trademark was first used in 1959, and products have continuously been sold under the BARBIE trademark and other trademarks (collectively, the "BARBIE Trademarks"). *Id*. at ¶ 14. As a result of this long-standing use by Mattel, strong common law trademark rights and goodwill have amassed in the BARBIE Trademarks. *Id.* The BARBIE Trademarks are registered with the United States Patent and Trademark Office. *Id.* True and correct copies of the United

States Registration Certificates for the BARBIE Trademarks are attached to the Sapper Decl. as Exhibit 1. *Id.* at ¶ 15. The U.S. Registrations for the BARBIE Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* The registrations for the BARBIE Trademarks constitute *prima facie* evidence of their validity and of Mattel's exclusive right to use the BARBIE Trademarks pursuant to 15 U.S.C. § 1057(b). The BARBIE Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1). *Id.* at ¶ 17.

The BARBIE Trademarks are distinctive when applied to Barbie Products, signifying to the purchaser that the products come from Mattel and are manufactured to Mattel's quality standards. *Id*. at ¶ 16. Products bearing the BARBIE Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Mattel. *Id.* at ¶ 18. As such, the goodwill associated with the BARBIE Trademarks is of incalculable and inestimable value to Mattel. *Id.*

Plaintiff has registered the Barbie silhouette (the "Barbie Copyrighted Work") with the United States Copyright Office. *Id*. at ¶ 20. Since its first publication, the Barbie Copyrighted Work has been used on the Barbie Products. *Id*. at ¶ 21.

### B. Defendants' Unlawful Activities

The success of the Barbie brand has resulted in significant counterfeiting of the BARBIE Trademarks and copying of the Barbie Copyrighted Work. Sapper Decl. at ¶ 22. Consequently, Mattel has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id*. In recent years, Mattel has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized Products to consumers in this Judicial District and throughout the United States. *Id*.

Mattel's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Unauthorized Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. If Defendants provide additional credible information regarding their identities, Mattel will take appropriate steps to amend the Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the BARBIE Trademarks and the Barbie Copyrighted Work. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65 (b). The entry of an *ex parte* TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the BARBIE Trademarks and the Barbie Copyrighted Work and preserve the status quo until a hearing can be held.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., the Copyright Act 17 U.S.C. § 501, *et seq*., 28 U.S.C. §§ 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. Personal jurisdiction is proper over Defendants. Defendants have structured their business to target the United States market, including Illinois, by accepting payment from and agreeing to ship Unauthorized Products to residents of Illinois. On information and belief, Defendants have transacted business in the United States, including Illinois. *See* [1] at ¶¶ 2, 28, 36-37; *NBA*

4

*Properties, Inc. v. HANWJH*, 46 F.4th 614, 624–27 (7th Cir. 2022); *American Girl, LLC v. Zembrka*, 2024 U.S. App. LEXIS 23555, at *7-10 (2d Cir. Sept. 17, 2024).

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*. The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id*. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). Under "the sliding scale approach[,]" the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*.

### B. Plaintiff Will Likely Succeed on the Merits

i. <u>Plaintiff Will Likely Succeed on its Trademark Infringement, Counterfeiting, and False Designation of Origin Claims.</u>

A defendant is liable for trademark infringement and counterfeiting if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any

goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

In this case, the BARBIE Trademarks are distinctive and are registered with the United States Patent and Trademark Office. Sapper Decl. at ¶ 14-15. The registrations for the BARBIE Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id*. at ¶ 15. The registrations for the BARBIE Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the BARBIE Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use any of the BARBIE Trademarks or copy or distribute the Barbie Copyrighted Work, and none of the Defendants are authorized retailers of Barbie Products. Sapper Decl. at ¶ 25. Thus, Plaintiff satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the BARBIE Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products/services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the

6

defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Plaintiff has submitted extensive documentation showing that Defendants are selling Unauthorized Products that look similar to genuine Barbie Products and use infringing and counterfeit marks identical to the BARBIE Trademarks. Both Plaintiff and Defendants advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine Barbie Products. Sapper Decl. at ¶¶ 5, 22-23, 26-27. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Barbie Products from Unauthorized Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Barbie Products to purchase Unauthorized Products instead. *Id.* at ¶¶ 25-27. In that regard, Defendants advertise Unauthorized Products using the BARBIE Trademarks. *Id.* at ¶ 27. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Barbie Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Plaintiff is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

    ii.    <u>Plaintiff Will Likely Succeed on its Copyright Infringement Claim</u>

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Barbie Copyrighted Work to the public. 17 U.S.C. § 106.

7

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, Courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* at 1105. A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

With respect to the first element, Plaintiff is the owner of federally registered Barbie Copyrighted Work. Sapper Decl. at ¶ 20. As to the second element, Defendants are willfully and deliberately reproducing the Barbie Copyrighted Work in their entirety and are willfully and deliberately distributing copies of the Barbie Copyrighted Work to the public by sale. Defendants' unauthorized copies are identical or substantially similar to the Barbie Copyrighted Work. Such blatant copying infringes upon Plaintiff's exclusive rights under 17 U.S.C. § 106. As such, Plaintiff proved it has a reasonable likelihood of success on the merits for its copyright infringement claim.

C. **There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Moreover, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent.,*

*Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). Likewise, in copyright infringement cases, the Seventh Circuit has held that an injury transforms into an irreparable injury when it is difficult to ascertain what business has been or will be lost. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (internal citation omitted). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979); *see Roadget Bus. PTE. LTD v. PDD Holdings Inc.*, 2023 U.S. Dist. LEXIS 131974, at *31 (N.D. Ill. July 31, 2023) (holding, in copyright case, "the alleged infringing activity occurred on an online platform . . . the harm is unquantifiable and not easily identifiable").

Defendants' unauthorized use of the BARBIE Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Sapper Decl. at ¶¶ 28-32. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Plaintiff will suffer

9

immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Sapper Decl. at ¶ 33.

Finally, Plaintiff is also likely to be irreparably harmed if an asset restraint is not entered. *See infra generally*. Since Defendants are individuals or businesses who reside in China or other foreign jurisdictions with no U.S. presence, Plaintiff is likely to be irreparably deprived of its equitable profits remedy without an injunction. *See Kay v. Individual*, No. 22-cv-3033-RJD, 2023 U.S. Dist. LEXIS 117379, at *8-9 (S.D. Ill. Apr. 14, 2023).

### D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996). With regards to copyright infringement, the Seventh Circuit has held that public interest is served from injunctive relief, since it "preserves the integrity of the copyright laws which

seek to encourage individual effort and creativity by granting valuable enforceable rights." *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982) (internal citations omitted).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Unauthorized Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. An *Ex Parte* Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement

An *ex parte* TRO is necessary and justified in this case given the unique circumstances of offshore e-commerce counterfeiting. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). Each Defendant is engaged in the inherently deceptive act of intellectual property infringement from outside the U.S. *See Gucci Am., Inc. v. Weixing Li*, 768

F.3d 122, 132-33 (2d Cir. 2014) (confirming authority to issue TRO and preliminary injunction freezing assets of offshore defendants selling counterfeit goods online); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (same); *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1990) ("Due to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds."), *aff'd*, 970 F.2d at 561 (9th Cir. 1992); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987-88 (11th Cir. 1995) (internal quotations omitted) (affirming a preliminary injunction freezing assets of U.S.-based defendants who arranged for making counterfeits in China). The Court should also consider actions taken by similarly situated defendants to evade court orders and/or move proceeds of infringing sales offshore. *See Cisco Sys.*, 2020 U.S. Dist. LEXIS 158008, at *10; *In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979).

Plaintiff has submitted evidence showing that Defendants are selling Unauthorized Products and operate from China or other foreign jurisdictions. *See* Sapper Decl. at ¶ 21. Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). Specifically, Plaintiff has established that Defendants operate offshore in China or other foreign jurisdictions. Sapper Decl. at ¶ 23. Plaintiff has concurrently filed a declaration evidencing that infringers like Defendants set up new e-commerce stores, and transfer proceeds of infringing sales to bank accounts outside the United States once they have received notice of a lawsuit. Declaration of Justin R. Gaudio ("Gaudio Decl.") at ¶¶ 5-10. Defendants are likely aware that it would be

12

"difficult if not impossible to enforce U.S. judgments in China." *Cisco Sys.*, 2020 U.S. Dist. LEXIS 158008 at *25; Gaudio Decl. at ¶¶ 11-12.

    **B.    A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the BARBIE Trademarks and Barbie Copyrighted Work Is Appropriate**

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the BARBIE Trademarks, or substantially similar marks, and/or copying and distribution of the Barbie Copyrighted Work, on or in connection with all e-commerce stores operating under the Seller Aliases. Courts have regularly authorized injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corp. v. P'ships, et al.,* No. 13-cv-00167, 2013 U.S. Dist. LEXIS 47248, at *24 (N.D. Ill. Mar. 27, 2013).

    **C.    Preventing the Fraudulent Transfer of Assets Is Appropriate**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Unauthorized Products is not impaired.[2] Issuing an *ex parte* restraint will ensure Defendants' compliance. If an asset restraint is not granted, Defendants will likely disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. On information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

"[T]he Court unquestionably has authority to freeze assets to preserve an equitable accounting of profits, a remedy provided to counterfeiting victims by 15 U.S.C. § 1117(a)." *Johnson & Johnson v. Advanced Inventory Mgmt.*, 2020 U.S. Dist. LEXIS 248831, at *8 (N.D. Ill.

---

[2] Plaintiff has filed a Motion for Leave to File Under Seal certain documents for this same reason.

July 20, 2020) (citations omitted); *see also Animale Grp. Inc.*, 256 F. App'x at 709 (collecting cases); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (upholding asset restraint to preserve profits remedy). Plaintiff has has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover . . . defendant's profits." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. The Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### D. Plaintiff is Entitled to Expedited Discovery

"[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id*. Courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. See Fed. R. Civ. P. 26(b)(2). Plaintiff requests expedited discovery to identify names and financial accounts Defendants use for their operations. The expedited discovery requested is limited to what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. See, e.g., *Deckers Outdoor Corp.*, 2013

U.S. Dist. LEXIS 47248, at *27-29. Plaintiff's asset restraint may have little meaningful effect without corresponding expedited discovery.

## V.  A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and false designation of origin, Plaintiff requests that the Court require Plaintiff to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g.*, *Deckers Outdoor Corp.,* 2013 U.S. Dist. LEXIS 47248, at *29.

## VI.  CONCLUSION

In view of the foregoing and consistent with previous similar cases, Plaintiff requests that the Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 10th day of December 2024.      Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Hannah A. Abes
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
habes@gbc.law

*Counsel for Plaintiff Mattel, Inc.*